**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Ma, | |
| *Plaintiff*, | **CASE NO. 1:25-cv-2284-PTG-LRV** |
| v. | |
| THE UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A , | |
| *Defendants*. | |

**DEFENDANTS VIMOSE DIRECT AND TODI INC.'S ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S VERIFIED COMPLAINT**

efendants VIMOSE DIRECT (Seller ID: AQ77YTF51Q70A) and TODI INC. (Seller ID:

A3VB7Z8D4R2VRB) (collectively, "Answering Defendants"), by and through their undersigned

counsel, hereby answer Plaintiff Qiaoxi Ma's Verified Complaint as follows:

**I. JURISDICTION AND VENUE**

**Paragraph 1:** "This Court has original subject matter jurisdiction over Plaintiff's claims pursuant

to the provisions of the Patent Act, 35 U.S.C. § 1 et seq., 28 U.S.C. § 1338(a)-(b) (exclusive patent

claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction)."

> **ANSWER:** Answering Defendants admit that Plaintiff purports to bring this action
>
> under the patent laws of the United States and that 28 U.S.C. §§ 1331 and 1338(a)
>
> generally confer subject matter jurisdiction over such claims. Answering
>
> Defendants deny that Plaintiff is entitled to any relief.

**Paragraph 2:** "This Court has personal jurisdiction because all accused products sold by the

Defendants have been offered for sale and sold to residents of this judicial district."

1

**ANSWER:** Answering Defendants admit that they operate online storefronts that may be accessible to residents in this judicial district. Answering Defendants deny that they have sold any "accused products" that infringe any valid intellectual property right of Plaintiff. Answering Defendants deny the remaining allegations in Paragraph 2.

**Paragraph 3:** "This Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Virginia, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A (the 'Seller Aliases'). Specifically, Defendants have targeted sales to Virginia residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Virginia, accept payment in U.S. dollars and offer to sell and have sold products which infringe Plaintiff's patented design, as described below, (collectively, the 'Unauthorized Products') to purchasers residing in Virginia and in this judicial district. Each of the Defendants committed tortious acts in Virginia, is engaged in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Virginia and in this judicial district."

**ANSWER:** Answering Defendants admit they operate commercial internet stores that accept U.S. dollars and offer shipping to the United States. Answering Defendants deny that they operate under "aliases" to conceal their identity. Answering Defendants deny that they offer to sell or have sold products that infringe Plaintiff's patented design. Answering Defendants deny that they have committed any tortious acts in Virginia, deny they have wrongfully caused Plaintiff injury, and deny the remaining allegations in Paragraph 3.

2

**Paragraph 4:** "Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because the Defendants are subject to the Court's personal jurisdiction and are not residents in the United States and therefore there is no district in which an action may otherwise be brought."

> **ANSWER:** Answering Defendants admit that they are not residents of the United States. Answering Defendants admit that 28 U.S.C. § 1391(b)(3) provides that a defendant not resident in the United States may be sued in any judicial district. Answering Defendants deny that venue is proper based on any admission of infringement or wrongdoing.

**Paragraph 5:** "Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since the Defendants are, on information and belief, aliens who are engaged in at least some of the infringing acts and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products to consumers into this District."

> **ANSWER:** Answering Defendants admit they are foreign entities. Answering Defendants deny engaging in any "infringing acts" or causing harm within this District. Answering Defendants deny the remaining allegations in Paragraph 5.

## II. INTRODUCTION

**Paragraph 6:** "Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented design from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series

of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented design, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief."

> **ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's reasons for filing this case. Answering Defendants deny that they infringe Plaintiff's patented design or sell "Unauthorized Products." Answering Defendants deny that they operate under "aliases" to conceal their identities, deny any "logical relationship" or "interworking" with other defendants identified in Schedule A, and deny that their independent business operations arise out of the same transaction or occurrence as other defendants. Answering Defendants deny violating Plaintiff's intellectual property rights and deny causing Plaintiff irreparable damage.

### III. THE PARTIES

**Paragraph 7:** "Plaintiff, Qiaoxi Ma, is a Chinese citizen with a residence address of No. 104 Wushuitan, Wu, Wanzi Village, Xiajiashan Town, Puning City, Guangdong Province, China and is owned by assignment of U.S. Design Patent No. D1,019,743 S (the "Patent-in-Suit"). A true and correct copy of the Patent-in-Suit is attached hereto as Exhibit 1."

**ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's citizenship and residence. Answering Defendants admit that U.S. Design Patent No. D1,019,743 S ("the '743 Patent") appears on its face to have been issued by the USPTO. Answering Defendants deny that the '743 Patent is valid or enforceable.

**Paragraph 8:** "The Patent-in-Suit was issued on March 26, 2024. See Exhibit 1."

**ANSWER:** Answering Defendants admit that the face of the '743 Patent indicates an issue date of March 26, 2024.

**Paragraph 9:** "The Patent-in-Suit is valid and enforceable and is entitled to a presumption of validity under 35 U.S.C. § 282."

**ANSWER:** Denied.

**Paragraph 10:** "The Patent-in-Suit discloses and claims a new ornamental design for a SELFIE STICK TRIPOD."

**ANSWER:** Answering Defendants admit that the '743 Patent is titled "Selfie Stick Tripod" and claims "the ornamental design for a selfie stick tripod, as shown and described". Answering Defendants deny that the design is "new" or patentable.

**Paragraph 11:** "Plaintiff designs, manufactures, markets, and sells a variety of products related to consumer electronics among other consumer electronic devices. Plaintiff is also the owner, by assignment, of other patents associated with selfie sticks including U.S. Design Patent Nos. D1,065,307S, D995,620S1, D995,468 S1, D981,469 S1, and D978,228 S1."

**ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 and therefore deny the same.

5

**Paragraph 12:** "Plaintiff sells its products, including products that embody the Patent-in-Suit (collectively, 'Plaintiff's Products'), exclusively direct-to-consumer through various online marketplaces including through his seller store on Amazon.com named 'Toobom' under the brand name 'Toobom.' Due to the popularity of the Plaintiff's patented invention and the flood of infringing products on the Amazon.com marketplace, Plaintiff's sales of its patented commercial embodiment dropped to the point he could not profitably sell the product any longer. Plaintiff was forced to cease the sales of the commercial embodiment of the Patent-in-Suit on his Amazon.com store and other ecommerce platforms. The Defendants' unlawful conduct of infringing the Patent-in-Suit has caused, and is continuing to cause, irreparable harm to Plaintiff."

> **ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to Plaintiff's sales channels, brand names, or business decisions regarding the cessation of sales. Answering Defendants deny engaging in any "unlawful conduct" or infringing the Patent-in-Suit. Answering Defendants deny causing irreparable harm to Plaintiff.

**Paragraph 13:** "On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities, and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network."

> **ANSWER:** Answering Defendants admit only that they operate the specific e-commerce stores associated with their respective Seller IDs (AQ77YTF51Q70A and A3VB7Z8D4R2VRB). Answering Defendants deny operating "jointly" with

other defendants. Answering Defendants deny using tactics to conceal their

identities and deny the existence of an "infringing network."

**Paragraph 14:** "On information and belief, Defendants are engaged in business in Virginia but

have not appointed an agent for service of process."

> **ANSWER:** Answering Defendants admit they conduct online business that may
>
> reach Virginia but deny they are required to appoint an agent for service of process
>
> in Virginia for these purposes.

**Paragraph 15:** "On information and belief, Defendants have registered, established, or purchased,

and maintained their Amazon storefronts on Amazon.com."

> **ANSWER:** Answering Defendants admit they maintain storefronts on
>
> Amazon.com.

**Paragraph 16:** "On information and belief, Defendants target their business activities toward

consumers throughout the United States, including within this District, through the simultaneous

operation of commercial internet-based e-commerce stores like Amazon.com."

> **ANSWER:** Answering Defendants admit they operate commercial e-commerce
>
> stores accessible to consumers in the United States. Answering Defendants deny
>
> the implication of any coordinated "simultaneous operation" with other unrelated
>
> defendants.

**Paragraph 17:** "On information and belief, each of the Defendants targets its business activities

toward consumers in Virginia at least through its operation of Amazon webstore on Amazon.com,

Inc. ('Amazon')."

> **ANSWER:** Answering Defendants admit their Amazon webstores are accessible
>
> to consumers in Virginia.

**Paragraph 18-21:** [Allegations regarding specific "Defendant 1," "Defendant 2," etc.]

    **ANSWER:** Answering Defendants are not identified by name in Paragraphs 18 through 21 of the Complaint. To the extent these allegations are directed at Answering Defendants, they admit operating their respective Amazon storefronts but deny targeting Virginia specifically beyond the general accessibility of the internet and deny any infringement.

**Paragraph 22:** "On information and belief, Defendants are the past and present controlling forces behind the sale of the Unauthorized Products infringing Plaintiff's intellectual property rights."

    **ANSWER:** Answering Defendants admit they control the sales of products in their respective stores. Answering Defendants deny that any products sold are "Unauthorized Products" or infringe Plaintiff's intellectual property rights.

**Paragraph 23:** "On information and belief, Defendants have purposefully directed some portion of their illegal activities towards consumers in Virginia through the advertisement, offer to sell, sale, and/or shipment of the Unauthorized Products into the State."

    **ANSWER:** Denied. Answering Defendants deny any "illegal activities" or the sale of "Unauthorized Products."

**Paragraph 24:** "On information and belief, many Defendants registered and maintained their Amazon storefront for the sole purpose of engaging in the infringing activities and will likely continue to register or acquire new seller accounts on Amazon.com solely for the purpose of selling and offering for sale of the Unauthorized Products unless preliminarily and permanently enjoined."

    **ANSWER:** Denied. Answering Defendants operate legitimate businesses and deny registering storefronts for the purpose of infringement.

**Paragraph 25:** "Plaintiff has identified Defendants based on their Amazon Storefront aliases, as their identities and locations remain unknown. Many of Defendants are operating multiple internet storefronts and online marketplace seller accounts using different seller accounts on Schedule 'A'. As a result, there are more seller accounts than there are Defendants, a fact that will be confirmed in discovery. If Defendants provide additional credible information regarding their identities and locations, Plaintiff will take appropriate steps to amend the Complaint."

> **ANSWER:** Answering Defendants admit they are identified by their Storefront names. Answering Defendants deny operating multiple undisclosed accounts or concealing their identities.

**DEFENDANTS' UNLAWFUL CONDUCT**

**Paragraph 26:** "The success of the Plaintiff's Products has resulted in significant infringement of the Patent-in-Suit. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon and Walmart, Inc. ('Walmart'), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as Schedule A."

> **ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the success of Plaintiff's products or their anti-infringement program. Answering Defendants deny that they offer "Unauthorized Products" or infringe the Patent-in-Suit.

9

**Paragraph 27:** "The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. The *Counterfeit Silk Road Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (Exhibit 2)."

> **ANSWER:** Answering Defendants admit their stores are accessible in the U.S. Answering Defendants deny that they sell counterfeit products or smuggle products. Answering Defendants lack knowledge or information sufficient to form a belief as to the contents of the third-party report cited.

**Paragraph 28-29:** [Allegations citing reports by Daniel C.K. Chow and Dept. of Homeland Security regarding general counterfeiting practices, multiple storefronts, and hurdles for brand owners.]

> **ANSWER:** Answering Defendants lack knowledge or information sufficient to form a belief as to the general industry reports cited. Answering Defendants deny that these general allegations regarding "counterfeiters" apply to them. Answering Defendants deny engaging in the conduct described.

**Paragraph 30:** "Defendants have targeted sales to Virginia residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Virginia, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Virginia. See Exhibit 5."

**ANSWER:** Answering Defendants admit operating e-commerce stores that ship to the U.S. Answering Defendants deny selling "Unauthorized Products" or targeting Virginia specifically beyond general nationwide availability.

**Paragraph 31:** "Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers... Plaintiff has not licensed or authorized Defendants use of the Patent-in-Suit, and none of the Defendants are authorized retailers of Plaintiff's Products."

**ANSWER:** Answering Defendants admit they use standard e-commerce features provided by platforms like Amazon. Answering Defendants deny employing "similar advertising strategies" in concert with other defendants. Answering Defendants admit they are not authorized retailers of Plaintiff, but deny needing authorization to sell their own non-infringing products.

**Paragraph 32-36:** [Allegations regarding fraudulent registration, multiple aliases, common templates, communication via QQ.com/sellerdefense.cn, and offshore accounts.]

**ANSWER:** Denied. Answering Defendants deny engaging in fraudulent registration, deny communicating with other defendants to coordinate infringement, and deny relying on "sellerdefense.cn" or similar sites to evade detection.

**Paragraph 37:** "Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed the Patent-in-

Suit in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Virginia over the Internet."

> **ANSWER:** Denied. Answering Defendants deny working in active concert with any other defendant. Answering Defendants deny infringing the Patent-in-Suit, willfully or otherwise.

**Paragraph 38:** "On information and belief, Defendants are concurrently sourcing the Unauthorized Products from the same or coordinated manufacturer... The similarities among the Unauthorized Products are so striking that an ordinary observer tasked with comparing the Products would be unable to recognize any similarities as mere coincidences and would rather infer that the Products originate from the same manufacturer. As shown in the claim chart attached as Exhibit 5, each of the Unauthorized Products employs the same design features as the Patent-in-Suit..."

> **ANSWER:** Denied. Answering Defendants deny that their products are "Unauthorized Products." Answering Defendants deny that their products employ the same design features as the Patent-in-Suit or that an ordinary observer would find them substantially similar to the Patent-in-Suit.

**Paragraph 39:** "Defendants' unauthorized use and/or manufacturing of the ornamental designs claimed in the Patent-in-Suit... is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff."

> **ANSWER:** Denied.

### COUNT I: PATENT INFRINGEMENT (35 U.S.C. § 271)

**Paragraph 40:** "Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs."

**ANSWER:** Answering Defendants repeat and incorporate by reference their responses to Paragraphs 1 through 39 above.

**Paragraph 41:** "As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the Patent-in-Suit."

**ANSWER:** Denied.

**Paragraph 42:** "As shown in the claim chart attached as Exhibit 5, the products being sold by Defendants incorporate each of the design elements claimed in the Patent-in-Suit so as to cause an ordinary observer and purchaser to confuse these counterfeit products for those made, offered for sale, and sold by Plaintiff under the Patent-in-Suit. Accordingly, each product being sold by each of the Defendants infringe upon the Patent-in-Suit."

**ANSWER:** Denied. Answering Defendants deny that their products incorporate the design elements of the Patent-in-Suit or would cause confusion to an ordinary observer.

**Paragraph 43:** "As part of their overall infringement scheme, Defendants are, on information and belief, concurrently employing and benefitting from substantially similar advertising and marketing strategies based in large measure upon an illegal use of infringements of the Patent-in-Suit. Considering the striking similarities among the Unauthorized Products, Defendants likely

source the Products from the same manufacturer, further solidifying their concurrent infringement

scheme targeting consumers in the United States and Virginia."

**ANSWER:** Denied.

**Paragraph 44:** "Specifically, Defendants offer for sale, sell, and/or import into the United States

for subsequent resale or use Unauthorized Products that infringe directly and/or indirectly and

under the doctrine of equivalents the ornamental design claimed in the Patent-in-Suit because in

the eye of an ordinary observer, giving such attention as a purchaser usually gives, the Patent-in-

Suit and each product being sold by Defendants are substantially the same."

> **ANSWER:** Denied. Answering Defendants deny that their products are
> substantially the same as the claimed design in the '743 Patent in the eye of an
> ordinary observer.

**Paragraph 45:** "As a direct and proximate result of Defendants' infringement, Plaintiff has

suffered irreparable harm and monetary and other damages in an amount to be determined.

Defendants' infringement of the Patent-in-Suit in connection with the offering to sell, selling, or

importing of products that infringe the Patent-in-Suit, including such acts into the State of Virginia,

is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer

irreparable harm resulting from the loss of its lawful patent rights to exclude others from making,

using, selling, offering for sale, and importing the patented design as well as the lost sales and loss

of repeat sales stemming from the infringing acts."

**ANSWER:** Denied.

**Paragraph 46:** "Defendants infringement has been and continues to be willful. Accordingly,

Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under

35 U.S.C. § 285."

**ANSWER:** Denied.

**Paragraph 47:** "Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the Patent-in-Suit, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights."

**ANSWER:** Denied.

**Paragraph 48:** "Plaintiff is entitled to recover all damages allowable under the patent laws, including those damages adequate to compensate for the infringement, pursuant to 35 U.S.C. §§ 284 and 289, but in no event less than a reasonable royalty."

**ANSWER:** Denied.

**PRAYER FOR RELIEF**

**ANSWER:** Answering Defendants deny that Plaintiff is entitled to any of the relief requested in the Prayer for Relief, Paragraphs 1 through 9.

**<u>AFFIRMATIVE DEFENSES</u>**

Answering Defendants assert the following affirmative defenses, without assuming the burden of proof on any issue for which the applicable law places the burden on Plaintiff:

**FIRST AFFIRMATIVE DEFENSE**
**(Non-Infringement)**

Answering Defendants have not infringed and do not infringe, directly, contributorily, or by inducement, any valid and enforceable claim of the '743 Patent. The accused products do not embody the ornamental design claimed in the '743 Patent, nor are they substantially the same as the claimed design in the eyes of an ordinary observer.

**SECOND AFFIRMATIVE DEFENSE**
**(Invalidity)**

15

The claim of the '743 Patent is invalid for failure to satisfy the conditions of patentability set forth in Title 35 of the United States Code, including but not limited to §§ 102, 103, and 112. The claimed design is anticipated or rendered obvious by prior art not fully considered by the USPTO. Furthermore, the claimed design is invalid as primarily functional rather than ornamental.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted against Answering Defendants.

### FOURTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

Answering Defendants have not willfully committed any act of infringement. Plaintiff has failed to plead facts sufficient to support a claim of willful infringement.

### FIFTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE
### (Res Judicata/Collateral Estoppel/Issue Preclusion)

Plaintiff's claim for injunctive relief is barred in whole or in part by the doctrine of res judicata, collateral estoppel and/or issue preclusion insofar as such issues were the subject of a prior action between the parties.

## COUNTERCLAIMS

Defendants/Counter-Plaintiffs VIMOSE DIRECT and TODI INC. ("Counter-Plaintiffs"), by and through their undersigned counsel, for their Counterclaims against Plaintiff/Counter-Defendant QIAOXI MA ("Counter-Defendant"), hereby allege as follows:

## I. THE PARTIES

1. Counter-Plaintiff VIMOSE DIRECT is a merchant operating on the Amazon.com online marketplace with Seller ID AQ77YTF51Q70A.

2. Counter-Plaintiff TODI INC. is a merchant operating on the Amazon.com online marketplace with Seller ID A3VB7Z8D4R2VRB.

3. Counter-Defendant QIAOXI MA is, upon information and belief, an individual residing in China and the named inventor and assignee of U.S. Design Patent No. D1,019,743 S ("the '743 Patent").

## II. JURISDICTION AND VENUE

4. These Counterclaims arise under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6. This Court has personal jurisdiction over Counter-Defendant because Counter-Defendant has submitted to the jurisdiction of this Court by filing the Complaint initiating this action and availing himself of the privileges of conducting litigation in this forum.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Counter-Defendant has consented to venue by filing the underlying Complaint in this District.

## III. FACTUAL BACKGROUND

8. The market for selfie sticks and portable tripods is a mature and crowded field, characterized by thousands of prior art designs and utility patents dating back many years before the filing of the '743 Patent application.

9. Because the field of selfie stick tripods is crowded with prior art, the scope of protection afforded to any new design patent in this field, including the '743 Patent, is extremely narrow. It is limited strictly to the identical or virtually identical ornamental features shown in the patent figures.

10. The '743 Patent claims "the ornamental design for a selfie stick tripod, as shown and described." However, the overall appearance of the claimed design is dictated primarily by the functional requirements of the device.

11. Specifically, the device depicted in the '743 Patent consists of essential functional components: a handle that splits into legs to form a tripod for stability; a telescoping rod to adjust height; and a clamping mechanism to hold a smartphone.

12. The configuration of three legs is functional and necessary to provide a stable base for the tripod. The shape and angle of the legs are dictated by the need to support the weight of the device and a phone without tipping over.

13. The vertical telescoping rod is purely functional, designed to extend and retract to allow for portability and variable height adjustment. Its cylindrical or tubular shape is dictated by the manufacturing constraints and the mechanical necessity of sliding concentric tubes.

14. The phone holder/clamp assembly at the top of the device is functional, designed to grip a mobile device securely. Its shape is largely dictated by the dimensions of standard smartphones and the need for a spring-loaded or screw-tightened gripping mechanism.

15. Counter-Plaintiffs offer for sale selfie stick products that are distinct in appearance from the specific ornamental details claimed in the '743 Patent.

16. To the extent Counter-Plaintiffs' products share any similarity with the '743 Patent, such similarity stems solely from the functional elements common to all selfie stick tripods (e.g., having three legs, a vertical rod, and a phone holder) or from standard features found in the prior art, which are not protectable by the '743 Patent.

17. An ordinary observer, familiar with the prior art, would not be deceived into believing that Counter-Plaintiffs' products are the same as the design claimed in the '743 Patent. The differences in the specific contours, proportions, surface ornamentation, and details are significant enough to distinguish the designs.

18. Despite these differences, Counter-Defendant has filed the Complaint in this action, accusing Counter-Plaintiffs of infringement, thereby creating a substantial, immediate, and real controversy between the parties.

### IV. COUNT I
### Declaratory Judgment of Non-Infringement of U.S. Patent No. D1,019,743 S

19. Counter-Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 18 above.

20. There is an actual, substantial, and continuing justiciable controversy between Counter-Plaintiffs and Counter-Defendant regarding the alleged infringement of the '743 Patent.

Counter-Plaintiffs have not infringed and do not infringe, directly, contributorily, or by inducement, the claim of the '743 Patent.

21. Under the "Ordinary Observer" test, as applied in light of the prior art, the accused products sold by Counter-Plaintiffs do not embody the patented design.

22. The scope of the '743 Patent is severely limited by the extensive prior art in the field of selfie sticks and tripods. When the '743 Patent is properly construed to exclude these prior art features, the accused products are clearly distinguishable.

23. Furthermore, any similarity between the accused products and the figures in the '743 Patent is limited to functional features (such as the general concept of a tripod base and extendable rod) or features that are common to the genre and unprotectable.

24. A comparison of the accused products with the drawings of the '743 Patent reveals numerous differences in the shape of the handle, the design of the remote control slot (if any), the texturing of the surface, the joints of the tripod legs, and the specific geometry of the phone clamp.

25. Because the accused products are not "substantially the same" as the patented design in the eyes of an ordinary observer, there is no infringement.

26. Counter-Plaintiffs are entitled to a judicial declaration that they have not infringed, and are not infringing, the '743 Patent, to resolve the uncertainty and insecurity caused by Counter-Defendant's accusations.

## V. COUNT II
## Declaratory Judgment of Invalidity of U.S. Patent No. D1,019,743 S

27. Counter-Plaintiffs re-allege and incorporate by reference the allegations set forth in Paragraphs 1 through 27 above.

28. There is an actual, substantial, and continuing justiciable controversy between Counter-Plaintiffs and Counter-Defendant regarding the validity of the '743 Patent.

29. The claim of the '743 Patent is invalid for failure to meet the conditions of patentability under 35 U.S.C. §§ 102, 103, 112, and 171, and any other applicable provisions of Title 35.

30. The '743 Patent is invalid because the claimed design is primarily functional rather than ornamental. A design patent may not be obtained for a configuration of an article that is dictated by the function of the article.

31. The overall appearance of the selfie stick tripod claimed in the '743 Patent is dictated by its function as a collapsible support stand for photography. The arrangement of the legs, the central shaft, and the bracket are all necessary to perform the mechanical function of the device.

32. There are no, or insufficient, alternative designs available for the functional purpose of a compact, foldable selfie stick tripod that would allow the device to perform the same function with a significantly different appearance. Granting patent protection to this design would effectively grant a monopoly on the functional utility of the device itself.

33. The claim of the '743 Patent is invalid because the claimed design was anticipated by prior art. Upon information and belief, identical or substantially similar designs were described in printed publications, in public use, on sale, or otherwise available to the public before the effective filing date of the '743 Patent.

34. The claim of the '743 Patent is invalid because the differences between the claimed design and the prior art are such that the claimed design as a whole would have been obvious before the effective filing date of the claimed invention to a designer of ordinary skill in the art to which the claimed invention pertains.

35. It would have been obvious to a designer of ordinary skill to combine features from various existing selfie sticks and tripods found in the prior art to create the design claimed in the '743 Patent. The combination of a split-handle tripod base with a telescoping rod is a well-known concept in the industry.

36. The visual impression created by the '743 Patent is basically the same as the visual impression created by prior art references, either alone or in combination, making the design unpatentable under § 103.

37. The '743 Patent is invalid because the claim and the disclosure fail to particularly point out and distinctly claim the subject matter regarded as the invention. The drawings may contain inconsistencies, ambiguities, or insufficient detail to enable a designer of ordinary skill to make and use the design, or to determine the scope of the claim with reasonable certainty.

38. The design lacks the requisite ornamentality required for design patent protection. The features are utilitarian and lack independent aesthetic value.

39. Counter-Plaintiffs are therefore entitled to a judicial declaration that the '743 Patent is invalid and unenforceable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-Plaintiffs VIMOSE DIRECT and TODI INC. respectfully request that this Court enter judgment in their favor and against Plaintiff/Counter-Defendant QIAOXI MA as follows:

A. Dismissing Plaintiff's Complaint with prejudice and denying Plaintiff all relief requested therein;

B. Entering a declaratory judgment that Counter-Plaintiffs have not infringed, and do not infringe, U.S. Design Patent No. D1,019,743 S;

C. Entering a declaratory judgment that U.S. Design Patent No. D1,019,743 S is invalid and/or unenforceable;

D. Finding that this is an exceptional case pursuant to 35 U.S.C. § 285 and awarding Counter-Plaintiffs their reasonable attorneys' fees and expenses;

E. Awarding Counter-Plaintiffs their costs of suit incurred herein; and

F. Granting Counter-Plaintiffs such other and further relief as this Court deems just and proper.

Date: January 12, 2026 _____ /s/ Paul Felipe Williamson _____

Paul Felipe Williamson, Esq.
Kevin J. O'Connor, Esq. (Pro Hac Vice)
Peckar & Abramson, P.C.
2055 L Street NW, Suite 750
Washington, DC 20036
Telephone: (202) 293-8815
Facsimile: (202) 293-7994
pwilliamson@pecklaw.com
koconnor@pecklaw.com

Jie Li, Esq. (Pending Pro Hac Vice)
**Glacier Law LLP**
251 S Lake Avenue, Suite 910
Pasadena, CA 91101
jie.li@glacier.law
(626)750-0040

***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, I did electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Paul Felipe Williamson*
Paul Felipe Williamson, Esq.